UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GLORIA JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV1176 RWS |
| ) | |
| COMPASS GROUP NORTH AMERICAN ) | |
| DIVISION d/b/a MORRISON ) | |
| MANAGEMENT SPECIALISTS, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Defendant Morrison Management Specialists, Inc. operates the cafeteria and provides catering service operations at Forest Park Hospital in St. Louis, Missouri. Plaintiff Gloria Johnson works for Morrison and was passed over for a promotion to the position of Catering Manager. Johnson alleges Morrison engaged in employment discrimination based on race and age when it failed to promote her. Morrison has moved for summary judgment. Because Johnson has failed to establish a claim of discrimination, I will grant summary judgment to Morrison.

*Background*

Defendant Morrison contracts with healthcare facilities throughout the United States to provide food service operations. In 1998, Morrison began providing food service operations to Forest Park Hospital in St. Louis Missouri. Prior to 2003, the management of Morrison's Forest Park operation consisted of a Director of Food and Nutrition Services (DFNS) who reported to a Regional Vice President. Three managers reported to the DFNS; the Retail Manager who supervised the cafeteria's service and the dining areas, the Production Manager who supervised

the kitchen, and the Patient Services Manager.

The Retail Manager was responsible for monitoring food sales; ensuring that food quality met appropriate standards; ensuring that proper sanitation procedures were followed; overseeing the handling of cash; and supervising, training, evaluating and disciplining all of the hourly employees performing cafeteria and catering functions. The Retail Manager also supervised the catering services that were provided to Forest Park's internal customers including its hospital departments. In providing catering services, Morrison staff processed customer orders for catered food, planned the events, ordered and prepared the food, set up the food display, and cleaned up after the event. In 2002, Morrison hired Brad Woodroffe, a white male currently age 35, as the Retail Manager.

Plaintiff Johnson, a forty-nine year old African-American female, began her employment with Morrison at Forest Park Hospital in 1998. Since her date of hire, her job title has been that of Food Service Worker although she is also referred to as a "café catering specialist." Johnson's job is an hourly, non-exempt position. In her cafeteria duties Johnson monitored and guided other cafeteria workers in performing their job duties, prepared food for display, took food temperatures, put away food, handled cash, and assisted Woodroffe with customer service. She was known as the "cafeteria lead" and worked in the cafeteria fifteen to forty hours per week, with no overtime in the cafeteria.

Before 2002, in addition to performing her cafeteria duties, Johnson began assisting the Retail Manager with the catering operations, and when Woodroffe became Retail Manager in 2002, Johnson assisted him with catering. Johnson alleges that her catering work was performed in addition to her full-time employment in the cafeteria. As a result, Johnson alleges that the

majority of her pay for catering work was compensated at the overtime rate of time-and-a-half of her normal hourly rate.

The process for handling catering events began when a customer faxed or delivered to Morrison a form called a requisition that included the customer's written specifications for the types of food to be served at the event and the expected number of guests in attendance. Johnson was required to forward the requisitions to the Production Manager, set up and breakdown the food displays at the events, order flowers or linens for special events, talk with clients, write out catering functions and keep records of them, and perform, at Woodroffe's direction, any number of other duties relating to catering. Johnson also calculated the cost of each requisition (referred to as "costing out" the event). The "costed out" requisitions were forwarded to Morrison's administrative assistant at Forest Park, Linda Stewart. Morrison's policy required Johnson to forward the cost out paperwork to Stewart by the Friday afternoon following the catered event. Any cost out requisitions that missed the deadline had to be completed by the end of the month.

Johnson did not perform any managerial duties with respect to catering. She had no authority to: schedule, hire, train, discipline or evaluate employees; plan menus; set production schedules; develop marketing or promotional ideas; or attend management meetings.

Food Service Worker Dorris Dowles also assisted in performing catering functions, including the set up and breakdown of food displays.

In June 2003, Morrison promoted Tracy Scranton to the DFNS position at Forest Park. She supervised all of Morrison's operations and personnel at Forest Park. Scranton reported to Regional Vice President Andrea Seidl. Scranton was never involved in conducting Johnson's formal performance reviews and she did not review any supervisor evaluations of Johnson's work

that were conducted prior to Scranton's promotion to DFNS.

Shortly after her promotion to DFNS, Scranton received complaints about Johnson's work, including: a complaint from the Production Manager, Pam Cook, that Johnson failed to forward requisitions to allow Cook to order food and plan for the production of catered events; a Donna Cognac complained several times that catering events were not set up on time; and complaints from two customers who were unhappy about Johnson's handling of catering functions. Based on these complaints, Scranton determined that Johnson's communication skills were unsatisfactory. Johnson disputes that she had communication problems. She asserts that she was never informed of or disciplined as a result of communication complaints.

After her appointment as DFNS, Scranton determined that the Forest Park operations were experiencing financial problems due to declining sales (including catering sales), declining patient services, and excessive labor costs. Scranton decided that a reorganization of operations would be needed to address the financial difficulties. She consulted with Morrison's Human Resources Manager for assistance in conducting the reorganization.

During August 2003, while the reorganizing plan was being developed, Scranton received the results of Forest Park's Customer Satisfaction Survey for the second quarter of 2003. The survey was conducted by an outside agency. Among other results, the survey indicated that customers' overall satisfaction with the catering services dropped from 91% during the previous quarter to 77%. This drop in satisfaction was noticed by Kathy Dean, Forest Park's Integrated Service Director, who acted as a liaison between Morrison and Forest Park. She forwarded a copy of the survey to Scranton and specifically noted the drop in catering satisfaction. Dean intended her note to draw attention to the problem which she expected Scranton to correct.

Based on the survey and Dean's note, Scranton determined that she needed to significantly upgrade the catering operations.

Scranton decided to create a new catering manager position that would report directly to her. She consulted with Morrison's Human Resources Manager and learned that Morrison's company policy required the new position to be ranked as an Associate Director position. According to Morrison's standard job descriptions, all Associate Directors were required to have a four-year bachelor's degree or a two-year associates degree and a minimum of three years related experience.

The new Catering Manager's job duties would include planning catering events, costing out the events, creating marketing presentations relating to the improvement of Morrison's catering services, presenting upscale food displays, handling guest relations, developing menu selections, conducting surveys, communicating directly with hospital administration, hiring, training, supervising and disciplining subordinates, and improving overall customer satisfaction. This position was a salaried, exempt position with no eligibility for overtime pay.

In September 2003, Scranton submitted a form detailing the duties and qualifications of the Catering Manager position to Morrison Research Network. That entity is the company's recruiting division which posts opportunities regarding available positions on the company web site and creates and distributes Position Availability Reports regarding available positions. Scranton also posted a job notice that described the duties and qualifications of the Catering Manager position on the bulletin board in Morrison's Forest Park office.

Heather Thixton, a twenty-four year old Caucasian female, was a managerial candidate who had been hired in August of 2003 into Morrison's in house management training division.

She applied for the Catering Manager position at Forest Park in September of 2003. She had a four-year degree in hospitality management and also had experience in hospitality management and restaurant operations. Thixton was interviewed and hired by Scranton.

Scranton did not consider Johnson to fill the Catering Manager position because she did not have the requisite bachelor's degree or associate's degree with three years of management experience. Scranton also determined that Johnson was unqualified for the position, among other reasons, based on the complaints from Cook and Cognac regarding Johnson's performance.

In September of 2003 Scranton implemented the reorganization of operations at Forest Park. Scranton removed all catering duties from Woodroffe, Johnson and Dowles and consolidated those duties in the new Catering Manager position held by Thixton. All hourly employee's work hours were reduced from 8 per day to 7.5 per day. As part of the reorganization, Morrison laid off Mary Hodes, a twenty-one year old Caucasian Food Service Worker, and Jerry Smith, a Caucasian in his thirties who performed vending duties. Other employees' duties were also rearranged.

On September 18, 2003, Scranton and Woodroffe informed Johnson that she and Woodroffe would no longer perform catering duties.

After the reorganization, Johnson maintained her employment at the hospital and did not experience any reduction in her base pay or benefits. She received an increase in her base pay shortly after the reorganization. Although she continued to perform her regular cafeteria duties, she no longer performed any catering duties and, consequently, she no longer received overtime pay for that work.

Johnson asserts that Morrison discriminated against her employment on the basis of her

race and age. She bases her claim on the fact that Morrison promoted Thixton, a younger white employee, to the Catering Manager position and reassigned Johnson's catering duties to Thixton.

*Legal Standard*

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII

case).[1]

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. Aucutt, 85 F.3d at 1316. A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771,

---

[1] See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996)(applying McDonnell Douglas to an ADEA claim); Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994)(applying McDonnell Douglas to an MHRA claim).

777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

*Discussion*

Johnson's claims of race and age discrimination arise under the Missouri Human Rights Act. Race and age discrimination claims under the MHRA are analyzed in the same manner as claims under Title VII and the ADEA. Alanga v. Smithville R-II School District, 324 F.3d 975, 979 (8th Cir. 2003)(Title VII) and Schuler v. Phillips Petroleum Co., 169 F.3d 1171, 1172 (8th Cir. 1999)(ADEA). It is undisputed that Johnson does not offer any direct evidence of discrimination by Morrison. Her claims are based on circumstantial evidence, therefore, the McDonnell Douglas burden-shifting analysis applies to each claim.

Johnson's claims have been categorized by the parties as claims that Morrison discriminated against her by demoting her from her catering responsibilities and by failing to promote her to the position of Catering Manager.

*Discriminatory demotion claim*

To establish a prima facie case of discrimination based on a demotion, a plaintiff must show that: (1) she is a member of a protected group; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she was demoted; and (4) the employer treated similarly situated persons not in the protected group more favorably. See Fisher v. Pharmacia & Upjohn, 225 F.3d 915, at 919 (8th Cir. 2000).

Johnson is a member of a protected group based on her race, African-American, and on her age, over forty years old. The parties disagree over whether Johnson established the remaining three factors.

The undisputed evidence is that Morrison reorganized its food service business at its Forest Park account. In her deposition, Scranton stated that she decided to consolidate all of the responsibilities of running the catering operation under one person in the form of a Catering Manager. There is not any evidence in the record that remotely suggests that this reorganization was a ruse to relieve Johnson of her catering work.

Scranton stated in her deposition that she believed that Johnson was not performing her catering work at a level that met Morrison's expectations. Scranton formed this opinion based on a negative catering satisfaction survey (covering a time period when Johnson was the lead person for catering events) and on complaints by Cross and Cognac, among other factors. Johnson asserts that she never heard about the complaints lodged by Cross and Cognac and that she was never disciplined for a lack of communication concerning her catering duties. Simply because Johnson did not know of the complaints and was not disciplined does not create an inference that the complaints did not occur. The information relied upon by Scranton provides a legitimate basis for her to conclude that Johnson was not meeting Morrison's expectations in her catering work.

Morrison also challenges whether Johnson was demoted. It is undisputed that Johnson retained her full-time position in the cafeteria. Her pay and benefits for that position were not diminished, in fact, her base pay was increased shortly after the reorganization. Morrison argues that Johnson's loss of overtime pay was not a demotion. Johnson asserts that the reassignment of her catering work caused her to lose a majority of her overtime pay which effectively is a

-10-

demotion. Neither party offered any case law on point in support of their position. For the sake of argument I will assume that Morrison's reorganization resulted in a demotion for Johnson because it effectively prevented Johnson's ability to work additional hours at an overtime rate of pay.

As for the last element of this prima facie claim, Morrison asserts that no similarly situated employees, not in Johnson's protected group, were treated more favorably. The undisputed evidence is that Morrison reduced the work hours of all of its hourly employees in the reorganization. Only two positions were eliminated and the two employees that held those jobs were laid off. Both individuals were not in Johnson's protected group and both were impacted more than Johnson, they were terminated. (They were Mary Hodes, a twenty-one year old Caucasian Food Service Worker and Jerry Smith a Caucasian vending worker in his thirties.) In addition, Johnson's supervisor, Woodroffe, a Caucasian who was thirty-three years old at the time, was also divested of his catering duties as part of the reorganization. Johnson does not offer any evidence that a similarly situated employee was treated more favorably than herself.

I conclude that Johnson has failed to establish second and forth elements of her prima facie claim for discriminatory demotion.

Even if she had established all of the elements, summary judgment for Morrison on this claim would still be appropriate because Johnson is not able to show that Morrison's reason for taking away Johnson's catering duties was a pretext for discrimination. The undisputed evidence points to a legitimate business decision by Morrison to consolidate the catering duties at Forest Park under one manager. Johnson's questioning of the soundness of Morrison's decision is not enough to infer intentional discrimination. A federal court in a discrimination case does not sit as

a "super-personnel department that reexamines an entity's business decisions." Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994). Whether Morrison's decision to take away Johnson's catering duties was a poor decision, or even arbitrary and irrational, does not by itself prove that impermissible discrimination was the real reason for the employment action. McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 511-12 (8th Cir. 1995).

*Failure-to-promote claim*

Alternatively, Johnson claims that Morrison discriminated against her by not promoting her to the position of Catering Manager. The only evidence in support of her claim is that Morrison hired a younger white woman, Thixton, for that position.

To establish a prima facie case of failure-to-promote a plaintiff must demonstrate: (1) that she is a member of a protected group; (2) that she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that other employees of similar qualifications who were not members of a protected group were promoted at the time plaintiff's request for promotion was denied. See Lyoch v. Anheuser-Busch Companies, Inc., 139 F.3d 612, 614 (8th Cir. 1998).

Morrison argues that Johnson has failed to establish the second and forth elements of this claim.

To establish the second element, Johnson has to present evidence that she was qualified for the Catering Manager position. It is undisputed that the Morrison's company policy dictated that the Catering Manager position be designated as an Associate Director position. That designation requires an applicant to have a four-year bachelor's degree or a two-year associates degree and a minimum of three years related experience. Johnson did not have the educational

requirements for the position.

In addition, Scranton stated that she declined to consider Johnson for that job because of the negative catering satisfaction survey (that occurred under Johnson's leading the catering operation) and on complaints by Cross and Cognac, among other factors. She determined that these factors made Johnson unqualified for the Catering Manager position.

Given the undisputed evidence about Johnson's failure to meet the education requirement, that was neutrally dictated by Morrison's company policy, I find that Johnson has failed to establish this element of her claim.

Johnson is also unable to establish the fourth element of her claim. Thixton, who was appointed as the Catering Manager, had a four-year degree in hospitality management and also had experience in hospitality management and restaurant operations. Johnson did not have qualifications similar to Thixton.

Even assuming for argument that Johnson established a prima facie case of discrimination, she has not presented evidence to establish that Morrison's reasons for its actions were a pretext for discrimination. As discussed above, Morrison has presented evidence that it made a legitimate business decision to consolidate all of the catering operations under one manager. Morrison is free to make such decisions. It promoted Thixton instead of Johnson based on the criteria for the position and Scranton's observations. Thixton was a qualified candidate and Johnson was not.

Even though Johnson has lost a source of income based on Morrison's decision to consolidate catering operations, Johnson has not presented evidence that creates an inference that Morrison's actions were motivated by any discriminatory animus towards Johnson. As a result, I find that Morrison is entitled to summary judgment on Johnson's claims of race and age

discrimination.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Morrison Management Specialists, Inc.'s motion for summary judgment [#18] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 13th day of October, 2005.